UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ELEAZER UBALDO FELIX-DOMINGO,

       Petitioner,

v.                                                                Case No. 3:26-cv-141-MMH-SJH

GARRETT RIPA, et al.,

       Respondents.

_____

## **ORDER**

### **I. Status**

Petitioner Eleazer Ubaldo Felix-Domingo, an immigration detainee, initiated this action through counsel by filing a Petition for Writ of Habeas Corpus (Doc. 1; Petition) on January 24, 2026. The Federal Respondents (Director Garrett Ripa, Secretary Markwayne Mullin,[1] Attorney General Pam Bondi) filed a Response to Petition for Writ of Habeas Corpus (Doc. 7; Response). Respondent Warden Woodall filed a Motion to Dismiss (Doc. 11; Motion to Dismiss), arguing he is not a proper respondent in this case. Felix-Domingo filed a counseled Reply (Doc. 12; Reply). This case is ripe for review.

---

[1] On March 24, 2026, the United States Senate voted to confirm Markwayne Mullin as the Secretary of the Department of Homeland Security, replacing Kristi Noem. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mullin is automatically substituted as a party for Noem.

## II. Felix-Domingo's Petition

Felix-Domingo, a citizen of Guatemala, has resided in the United States since May 3, 2018. Petition at 14. On December 7, 2025, officers of the St. John's County Sheriff's Office arrested Felix-Domingo during a traffic stop. Id. The Department of Homeland Security (DHS) then placed Felix-Domingo in removal proceedings. Id. at 15. United States Immigration and Customs Enforcement (ICE) has charged Felix-Domingo with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without admission or inspection. Petition at 15.

Following Felix-Domingo's arrest and transfer to Baker Correctional Institution, ICE issued a custody determination to continue his detention without an opportunity to post bond. Id. at 16. Felix-Domingo requested a bond redetermination hearing; however, an immigration judge determined that he lacked jurisdiction to consider Felix-Domingo's bond request pursuant to Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025). Petition at 16.

In Count One of his Petition, Felix-Domingo argues that he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and is entitled to a bond hearing. Id. at 16–17. As Count Two, Felix Domingo asserts that his detention violates federal regulations. Id. at 17–18. In Count Three, Felix-Domingo contends that his prolonged detention without a bond hearing violates his right

2

to due process. Id. at 18–19. As relief, he asks the Court, inter alia, to direct his immediate release from detention. Id. at 19.

### III. Analysis

The Court first addresses the Federal Respondents' arguments that two statutory provisions—8 U.S.C. § 1252(g) and § 1252(b)(9)—deprive this Court of jurisdiction to adjudicate Felix-Domingo's claims and that Felix-Domingo failed to exhaust his administrative remedies prior to filing this case. See Response at 8. Because the Court rejects those arguments, the Court then addresses the merits of Felix-Domingo's claims.

### a. 8 U.S.C. § 1252(g)

Section 1252(g) states in pertinent part that "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). "It is a 'discretion-protecting provision' designed to prevent the 'deconstruction, fragmentation, and hence prolongation of removal proceedings.'" Camarena v. Dir., Immigr. & Customs Enf't, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 487 (1999)). Nevertheless, the provision "does not cover 'the universe of deportation claims.'" Id. (quoting Reno, 525 U.S. at 482). Indeed, the

Supreme Court has explained that section 1252(g) should be narrowly read to encompass only the "three discrete actions that the Attorney General may take: her decision or action to <u>commence</u> proceedings, <u>adjudicate</u> cases, or <u>execute</u> removal orders." <u>Reno</u>, 525 U.S. at 482 (internal quotation marks and citation omitted). While "'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [court] review" by this section. <u>Camarena</u>, 988 F.3d at 1272.

Here, Felix-Domingo is not attacking ICE's decision to commence removal proceedings, adjudicate his case, or execute an order of removal. Instead, Felix-Domingo is attacking ICE's decision to treat him as an "applicant for admission" under § 1225(b), which imposes mandatory detention, rather than as a noncitizen under § 1226(a), which permits a bond hearing before an immigration judge. Thus, the Court finds that § 1252(g) does not bar Felix-Domingo's claims.

### b. 8 U.S.C. § 1252(b)(9)—the "Zipper Clause"

Under the "Zipper Clause," "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). But "§ 1252(b)(9) 'does

not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 19 (2020) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294–95 (2018)). The Eleventh Circuit has "clarified that the zipper clause only affects cases that 'involve[ ] review of an order of removal.'" Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs., 964 F.3d 1250, 1257 (11th Cir. 2020) (quoting Madu v. U.S. Att'y Gen., 470 F.3d 1362, 1367 (11th Cir. 2006)).

Here, Felix-Domingo does not appear to have a final order of removal. Nor is he seeking to challenge the decision to seek removal or the process by which removability will be determined. Instead, as found above, he is challenging his classification under § 1225(b), which requires mandatory detention. Thus, § 1252(b)(9) does not bar this Court's review of his claims.

### c. Exhaustion

A petitioner need not exhaust administrative remedies if "the administrative body is shown to be biased or has otherwise predetermined the issue before it." McCarthy v. Madigan, 503 U.S. 140, 148 (1992). Recently, the Board of Immigration Appeals (BIA) found that immigration judges have no authority to consider bond requests from noncitizens who entered the United

5

States without inspection "because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025). Thus, the BIA has already "predetermined" the issue. Here, Felix-Domingo sought a redetermination of his custody, and the immigration judge denied the request on the belief that immigration judges lack the authority to consider such requests under Hurtado. Doc. 7-5 at 3. To require Felix-Domingo to seek review from the court that issued the Hurtado decision would be futile. District courts around the country, including some judges on this Court, have reached this same conclusion and declined to dismiss similar cases based on the alleged failure to exhaust. See, e.g., Patel v. Hardin, No. 2:25-cv-870-JES-NPM, 2025 WL 3442706, at *3 (M.D. Fla. Dec. 1, 2025) (collecting cases). Considering the circumstances, the Court rejects the Federal Respondents' exhaustion argument.

### d. Merits of Count One

The underlying premise of Felix-Domingo's claim is that he should be classified under 8 U.S.C. § 1226(a) and afforded a bond hearing before an immigration judge instead of being mandatorily detained under 8 U.S.C. § 1225(b)(2). The Court examines each of these statutes in turn.

Section 1225 governs "applicants for admission," which the statute defines as "[a]n alien present in the United States who has not been admitted" or those "arriv[ing] in the United States." 8 U.S.C. § 1225(a)(1); see Jennings, 583 U.S. at 287 (noting that under § 1225, "an alien who arrives in the United States, or is present in this country but has not been admitted, is treated as an applicant for admission" (internal quotation marks and citation omitted)). The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). Immigration laws require applicants for admission to be inspected by immigration officers to determine whether they should be admitted into the country. Jennings, 583 U.S. at 287. Certain applicants are subject to expedited removal. See 8 U.S.C. § 1225(b)(1). But, as relevant here, § 1225(b)(2) "serves as a catchall provision," Jennings, 583 U.S. at 287, and provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained," 8 U.S.C. § 1225(b)(2)(A).

On the other hand, section 1226(a) states: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §

7

1226(a). The Attorney General "may continue to detain the arrested alien" or "may release the alien on bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)(2) (emphasis added). The Supreme Court has recognized that this section "applies to aliens already present in the United States." Jennings, 583 U.S. at 303.

"'For the past three decades,'" the government has recognized "this dichotomy." Lopez v. Hardin, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) (quoting Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025) (appeal filed Oct. 24, 2025)). On July 8, 2025, however, the government changed course when the Department of Homeland Security (DHS) issued the following guidance:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated.

ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025). The BIA adopted and

applied this policy in <u>Matter of Yajure Hurtado</u>, 29 I. & N. Dec. 216 (2025). But district courts around the country have largely rejected the government's new interpretation of these regulations. <u>See, e.g.</u>, <u>Cetino v. Hardin</u>, No. 2:25-CV-1037-JES-DNF, 2025 WL 3558138, at *3 (M.D. Fla. Dec. 12, 2025); <u>Robles v. U.S. Dep't of Homeland Security</u>, No. 1:25-CV-1578, 2025 WL 3558128, at *6 & n.3 (W.D. Mich. Dec. 12, 2025); <u>Martinez-Martinez v. Noem</u>, No. 25CV2975-GPC(VET), 2025 WL 3552746, at *6 (S.D. Cal. Dec. 11, 2025) ("Given the Government's longstanding interpretation of §§ 1225(b) and 1226(a), the [c]ourt is further persuaded that 'seeking admission' applies to arriving aliens and not aliens who have entered without inspection and lived in the United States for years."); <u>Belsai D.S. v. Bondi</u>, - - - F. Supp. 3d - - -, 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025) ("Overwhelmingly, courts have rejected the interpretation offered by [the r]espondents that § 1225(b)(2) requires the detention of all noncitizens living in the country who are 'inadmissible' because they entered the United States without inspection."); <u>Pizarro Reyes</u>, 2025 WL 2609425, at *7 (collecting cases). <u>But see</u> <u>Lopez v. Dir. of Enf't & Removal Operations</u>, - - - F. Supp. 3d - - -, 2026 WL 261938, at *8 (M.D. Fla. Jan. 26, 2026) (disagreeing with the statutory interpretation that noncitizens seeking admission form "a distinct and narrower class than applicants for admission"); <u>Mejia Olalde v. Noem</u>, No. 1:25-CV-00168-JMD, 2025 WL 3131942, at *3 (E.D.

9

Mo. Nov. 10, 2025) (finding that § 1225(a)(1) "explicitly includes more than just arriving aliens in the definition of 'applicant[s] for admission'"); Vargas Lopez v. Trump, 802 F. Supp. 3d 1132, 1142 (D. Neb. 2025) (finding that "just because [the petitioner] illegally remained in this country for years does not mean that he is suddenly not an 'applicant for admission' under § 1225(b)(2)").

Until recently, appellate courts had yet to weigh in on the issue. On February 6, 2026, the Fifth Circuit Court of Appeals issued a published, but not unanimous opinion, reaching the opposite conclusion. See Buenrostro-Mendez v. Bondi, 166 F.4th 494, 498 (5th Cir. 2026). The majority concluded that an alien without lawful admission who has been present in the United States for a period of time is subject to mandatory detention under § 1225(b)(2).[2] See id. That decision is not binding here. And while the Court respects the reasoned decision of the majority, the dissenting opinion is more persuasive. As such, the Court adopts the reasoning of the Buenrostro-Mendez dissent in full. See id. at 508–21 (Douglas, J., dissenting). For these reasons,

---

[2] In a published, non-unanimous opinion, the Eight Circuit Court of Appeals reached the same conclusion as the Fifth Circuit. See Avila v. Bondi, - - - F.4th - - -, 2026 WL 819258, at *6 (8th Cir. Mar. 25, 2026).

Notably, a circuit split is likely on this issue. In ruling on a motion to stay pending appeal, the Seventh Circuit preliminarily determined that DHS was not likely to prevail on its argument that "§ 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders." Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1062 (7th Cir. 2025). The issue is also before the Eleventh Circuit. See Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065 (11th Cir.) (oral argument held Mar. 26, 2026).

10

the Court rejects the Federal Respondents' arguments that Felix-Domingo is subject to mandatory detention under § 1225(b)(2).

It is undisputed that Felix-Domingo entered the United States without inspection and has been residing here since 2018. Thus, he is not properly detained under § 1225(b)(2) as the Federal Respondents contend. Instead, his detention is governed by § 1226, and the Petition is due to be granted as to Count One.

### e. Motion to Dismiss

In the Motion to Dismiss, Woodall "requests the Court dismiss [him] from this proceeding with prejudice" as an improper respondent. Motion to Dismiss at 12. He argues that ICE is Felix-Domingo's "'immediate custodian'" and "the director of ICE's local field office responsible for the Baker Correctional Institution – not its 'warden' – is the proper respondent." Id.

According to the Federal Respondents, "[t]he individual having physical custody of a petitioner is the only appropriate respondent." Response at 2 n.2. They assert that "[a]ny relief the Court awards should be fashioned within the power of the immediate custodian or ICE/DHS." Id. The Federal Respondents explain that Woodall was the warden of Baker Correctional Institution when the State of Florida operated it as a men's prison; but Baker Correctional Institution closed and is now operated as "the North Florida Detention

11

Center"[3] with Eric Hall as the Facility Administrator. Id. at 1 n.1. Thus, the Federal Respondents contend that Felix-Domingo "is in the custody of Eric Hall, not Ronnie Woodall." Id.

As the parties' positions reflect, there is much confusion and difference of opinions on who the proper respondent is when an immigration detainee files a § 2241 petition. The Court recognizes Woodall's argument that while a warden may technically maintain day-to-day control of a facility, the warden does not have ultimate control over an immigration detainee's custody status, and a warden is ill-equipped to respond to a habeas petition and defend the federal government's interests. Nevertheless, the warden is the "immediate custodian" and presumably the individual who, upon ICE's direction, opens the door to release the detainee. Given the uncertainty and wide-ranging decisions on this particular issue, the Court declines to find that the warden is not a proper respondent. See, e.g., Vasquez v. Reno, 233 F.3d 688, 696 (1st Cir. 2000) ("[W]e hold that an alien who seeks a writ of habeas corpus contesting the legality of his detention by the INS normally must name as the respondent his immediate custodian, that is, the individual having day-to-day control over the facility in which he is being detained."); Pak v. Hoover, No. 3:26-CV-00379,

---

[3] ICE's online detainee locator refers to the facility as "Baker Correctional Institute."

2026 WL 624165, at *1 n.1 (M.D. Pa. Mar. 5, 2026) (maintaining the warden as the only respondent, but recognizing that "the government will be bound by the [c]ourt's judgment because [the warden] is acting as an agent of the federal government by detaining [the petitioner] on behalf of [ICE]"); Cid-Barrios v. Raycraft, No. 25-13630, 2025 WL 3724377, at *4 (E.D. Mich. Dec. 24, 2025) ("[T]he Acting Director of Enforcement and Removal Operations for the USCIS Detroit Field Office, and not the administrator of the contract detention facility in Lake County, is the proper respondent to be named in a habeas corpus petition filed by a non-citizen challenging his detention under section 2241."); Krechmar v. Parra, No. 2:25-CV-01095-SPC-DNF, 2025 WL 3620802, at *2 (M.D. Fla. Dec. 15, 2025) (recognizing that "[t]he warden of Alligator Alcatraz would be ill-equipped to respond to the merits of [the petitioner's] claims and to be the sole defender of the federal government's interests" (emphasis added)); Beltran v. Raycraft, - - - F. Supp. 3d - - - , 2025 WL 3237429, at *11-12 (W.D. Mich. Nov. 20, 2025) (recognizing that while the Sixth Circuit has concluded that a noncitizen must generally name his immediate custodian, that is ICE's district director for the district in which he is confined, there are exceptions, such as naming the Secretary of DHS to ensure at least one respondent maintains authority over the petitioner's custody in the event he is transferred out of the district; dismissing all respondents other than the

Secretary of DHS, including the warden of the facility at which the noncitizen was housed). As such, the Motion to Dismiss is due to be denied.

## IV. Remedy

Next, the Court must consider the appropriate remedy: immediate release from detention or a bond hearing. An immigration judge previously denied Felix-Domingo's requests for a bond hearing on the belief that immigration judges lack the authority to consider such requests under Hurtado. Doc. 7-5 at 3. Given BIA precedent, an immigration judge is likely to refuse to do so again. In the event that occurs, Felix-Domingo would receive no relief at all, and the writ of habeas corpus issued in this case would be rendered entirely meaningless. Therefore, the Court finds the most appropriate relief is release from detention.

## V. Conclusion

Based on the above, the Court finds Felix-Domingo is entitled to immediate release because he is not properly detained under § 1225(b)(2). Since the Court will grant the Petition on the basis of Count One, it does not, and need not, address Felix-Domingo's remaining claims. See Banks v. Dretke, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a

habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").[4]

Accordingly, it is **ORDERED**:

1.      Felix-Domingo's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as to Count One. Respondents shall release Felix-Domingo **within 24 hours of this Order**, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected. The Petition is otherwise **DENIED without prejudice** as moot.

2.      Respondent Warden, Baker Correctional Institution's Motion to Dismiss Petition for Writ of Habeas Corpus (Doc. 11) is **DENIED**.

3.      The **Clerk** is directed to terminate any motions, enter judgment granting the Petition as to Count One, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of March, 2026.

MARCIA MORALES HOWARD
United States District Judge

---

[4] Insofar as Felix-Domingo, requests attorney's fees, he may make such a request in a separate motion, if appropriate. See Local Rule 7.01, United States District Court, Middle District of Florida. Any such motion must be supported by a memorandum of law.

Jax-9 3/27
c:
Counsel of Record